**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FREDERICK SIMMS | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 12-701 (EGS) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Pending before the Court is the Motion for Preliminary Injunction of Plaintiff Frederick Simms ("Simms"). Plaintiff's car was seized by the Metropolitan Police Department ("MPD") on May 29, 2011, when he was accused of weapons violations. Plaintiff was acquitted of all charges in December 2011; nevertheless, the District of Columbia ("District") continues to maintain possession of the car in the hope of eventually getting title to it by prevailing in civil forfeiture litigation. The forfeiture proceedings were not commenced until June 1, 2012 and according to the District, could last another year, until June 2013.

In the nearly seven months following his acquittal, Mr. Simms has been unable to challenge the validity of the initial seizure and continuing retention of his vehicle prior to judgment in the forfeiture proceeding, nor will he have any

opportunity to do so for the next year while those proceedings are pending.  He contends that the District's failure to provide him with the opportunity for a prompt post-deprivation hearing to challenge the seizure and subsequent retention of his car, prior to judgment in his civil forfeiture case, violates his Fifth Amendment procedural due process rights.  He seeks an order enjoining the MPD from holding his vehicle, pending the conclusion of the forfeiture proceedings, without providing him notice and an opportunity to be heard.

Upon consideration of the plaintiff's motion, the opposition and reply, the parties' arguments during the June 13, 2012 motions hearing, the supplemental briefs submitted by the parties both before and after the hearing, and for the reasons set forth below, the Court finds that the District's failure to provide Mr. Simms with a post-seizure hearing to challenge the deprivation of his vehicle pending the conclusion of civil forfeiture proceedings violates his constitutionally-protected due process rights.  Accordingly, the plaintiff's motion for a preliminary injunction is **GRANTED.**

I.    **BACKGROUND**

   **A.    Statutory Background:   Forfeiture Procedures in the District of Columbia**

   Forfeiture of vehicles in the District is governed by the procedures set forth in D.C. Code § 48-905.02.[1]  Police are authorized to seize a conveyance which, *inter alia*, law enforcement officials have probable cause to believe is being used to transport, possess, or conceal any firearm in violation of District law.  D.C. Code § 7-2507.06a(b);  § 48-905.02(d)(3)(A).  Police officers need not obtain a warrant before seizing a conveyance.

   After seizing a vehicle, the MPD provides notice to any person having "a right of claim to the seized property." *Id.* § 48-905.02(d)(3)(A).  In order to assert a claim to the seized property, a person must, within thirty days from the date of receipt of notice of seizure, "file a claim with [the MPD] stating his [] interest in the property.  Upon filing of a claim, the claimant shall give a bond to the District government in the penal sum of $2500 or 10% of the fair market value of the claimed property (as appraised by the Chief of the MPD),

---

[1] There are several other statutory procedures pertaining to forfeiture, but each employs the procedures outlined in § 48-905.02.  Forfeiture of property seized in connection with alleged firearms offenses, which is at issue in this case, is covered by D.C. Code § 7-2507.06a.

whichever is lower, but not less than $250[.]" *Id.* § 48-905.02(d)(3)(B).  According to District Municipal Regulations, a claimant may apply for a waiver or reduction of the bond.  The MPD determines whether a claimant "is financially unable to give any bond or to give a bond in the required amount."  6-A D.C.M.R. § 806.6 (1991).  Neither the statute nor the regulations requires the MPD to make that determination within a specified period of time, however, nor do they provide a standard set of criteria for determining whether and to what extent a claimant is able to give a bond.[2]

Payment of the bond does not enable property owners to have their property returned pending litigation.  Instead, the District holds the property until it institutes forfeiture proceedings against the property in Superior Court.  D.C. Code § 48-905.02(d)(3)(E).  Although the statute provides that proceedings be instituted "promptly," *id.* § 48-905.02(c), there is no specified period of time in which the District must act; in Mr. Simms's case, the District initiated forfeiture proceedings over a year after the seizure, and the District

---

[2] If the person does not file a claim and pay the bond (or apply for a waiver of the bond) within thirty days of receipt of notice, the District, "after determining that the property is forfeitable under this chapter, shall declare the property forfeited and shall dispose of the property" by retaining it for official use or selling it.  D.C. Code § 48-905.02(d)(3)(C); § 48-905.02(d)(4).

4

admitted that the process was hastened as a direct result of the
Complaint and Motion for Preliminary Injunction plaintiff filed
in this Court.  *See, e.g.*, Defs.' Opp'n to Mot. for Prelim. Inj.
("Opp'n") at 3, Ex. 1, Decl. of Lt. Derek Gray ("Gray Decl.") at
¶¶ 22-25.  The forfeiture proceeding is the first opportunity in
which an owner of the vehicle may challenge the District's
probable cause for the seizure of the vehicle or its continued
custody of the vehicle.  *See* § 48-905.02(d)(2) (property owners
may not seek return of seized property through an action for
replevin).[3]

**B.   Factual & Procedural Background**

On May 29, 2011, MPD officers seized Mr. Simms's car after
they claimed to find a firearm in a bag inside the vehicle.
Compl. ¶ 34.  The car was taken to the MPD's impound lot in
Southwest D.C.  *Id.*  Mr. Simms was charged with several criminal
counts relating to the alleged possession of the firearm, found
indigent, appointed counsel from the Public Defender Service,
and, after a jury trial, was acquitted of all charges on
December 7, 2011.  *Id.* ¶¶ 35-37.  The same day, he went to the
MPD impound lot seeking return of his car, a 2007 Saturn Aura

---

[3] A person with "an interest in forfeited property" may file with
the Mayor a petition for remission or mitigation of the
forfeiture, D.C. Code § 48-905.02(d)(3)(F), but the statute
suggests, and District counsel confirmed during the motions
hearing, that this administrative option is not available until
after the property has been declared forfeited.  *Id.*

sedan.  Mot. for Prelim. Inj. ("Pl.'s Mot.") at 3, n.2.  A
police officer informed him that he would be required to pay a
bond of over $1200 in order to challenge MPD's decision to take
possession of his vehicle.  Compl. ¶ 38.  Plaintiff
independently learned that he could apply to get the bond
reduced or waived; he was not informed by the District.  Compl.
Ex. A, Decl. of Frederick Simms ("Simms Decl.") ¶ 8.  He
attempted to submit the application for waiver with the MPD, but
was told to get his application notarized and return with three
years of tax returns.  *Id.*  He did, and submitted his
application on March 19, 2012.  *Id.*, see also Opp'n, Ex. 1, Gray
Decl. ¶ 19.  On March 26, 2012, Lieutenant Derek Gray, the MPD's
Property Clerk, reviewed the application for a waiver and
reduced the bond to $800.  Gray Decl. ¶ 20.  Mr. Simms did not
pay the $800 bond which, as described in Section I.A *supra*,
would enable the start of adversarial forfeiture proceedings (at
a time entirely within District's control) but would not permit
him to seek the use of his car in the interim.  Mr. Simms states
that having a vehicle is central to his ability to commute to
work, to perform his job, and to transport himself, his fiancée,
and his 11-month-old daughter to doctors' appointments, daycare,
and visits to family members.  Simms Decl. ¶¶ 3-4, 10.  However,
he states, "I cannot afford to pay $800 to try to get my car
back.  All of the money I make from my wages ($12 an hour at AAA

6

Storage, in Sterling, Virginia) goes to transportation, rent, daycare, utilities, groceries, car insurance, and the $360 a month I pay on the car loan to Andrews Federal Credit Union for a car I can't even use." *Id.* ¶ 9.[4]  Because Mr. Simms did not pay the bond, the District was not obligated to commence forfeiture proceedings, and did not do so.

Plaintiff filed this action on May 1, 2012, and simultaneously filed a motion for preliminary injunction. Apparently in response to the litigation, on May 15, 2012, Lieutenant Gray waived the bond on Mr. Simms's vehicle.  Opp'n at 6, *see also* Gray Decl. ¶ 22.  As a result of the waiver of the bond, on May 15, 2012, MPD forwarded the forfeiture file to the District's Office of Attorney General.  *Id.* ¶ 23.  On May 18, 2012, the District filed a notice stating that "the civil forfeiture matter concerning the subject vehicle will be assigned to an attorney for further investigation."  Defs.' Praecipe Regarding Status of the Att'y Gen.'s Decision on Civil Forfeiture.  On June 1, 2012, the District commenced forfeiture proceedings in Superior Court by filing a Libel of Information for *in rem* civil forfeiture of Mr. Simms's car.  During oral argument on the preliminary injunction motion, counsel for the

---

[4]  Property owners must continue to make any loan payments while the property is impounded; otherwise, the MPD will return the vehicle to the lender.  D.C. Code § 48-905.02(a)(4)(D).

District stated that unless the forfeiture case settles, it will take about a year to litigate, until June 2013.

Since the Motion for Preliminary Injunction was filed in May, the parties have completed briefing, each filed two supplemental briefs, and the Court heard oral argument on June 13, 2012.  Plaintiff's motion for a preliminary injunction is now ripe for determination by the Court.

II.  **LEGAL STANDARD FOR INTERIM INJUNCTIVE RELIEF**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  Because it is "an extraordinary remedy," a preliminary injunction "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citations omitted).

These four factors have typically been evaluated on a "sliding scale," whereby if the movant makes an unusually strong showing on one of the factors, then he does not necessarily have to make as strong a showing on another factor. *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)

(citing *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 361 (D.C. Cir. 1999)).  While it is unclear whether the "sliding scale" is still controlling in light of the Supreme Court's decision in *Winter*, the Court need not decide this issue today because plaintiff has carried the burden of persuasion as to all four factors.[5]

## III. ANALYSIS

Mr. Simms argues that he has satisfied all four criteria necessary to obtain a preliminary injunction, while the defendants argue that none of the criteria have been met.  The Court will begin by addressing the likelihood of success on the merits.

### A.   Likelihood of Success on the Merits

To maintain a procedural due process claim, the plaintiff first must establish that the government deprived him of a

---

[5]  The District claims that Mr. Simms seeks a mandatory, as opposed to a prohibitory, injunction "that requires an even greater showing."  Opp'n at 8.  Some courts have held the movant for a mandatory injunction to a higher burden: the movant must show "clearly" that he is entitled to relief or that extreme or very serious damage will result.  *Vietch v. Danzig*, 135 F. Supp. 2d 32, 35 n.2 (D.D.C. 2001) (citations omitted).  The D.C. Circuit, however, has yet to address this question.  *See, e.g.*, *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834 n. 31 (D.C. Cir. 1984) ("In this circuit, however, no case seems to squarely require a heightened showing, and we express no view as to whether a heightened showing should in fact be required.").

constitutionally protected property interest, and then must establish that the government's procedures in doing so do not satisfy procedural due process. *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010). The District does not contest the first step of the analysis, namely, that Mr. Simms's interest in having access to and use of his car is a property right protected by the Due Process Clause, and that by seizing the car, the District affected a deprivation of this property interest. *See, e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 85, 89-90 (1972) (due process protection applies to pre-judgment deprivation of household goods such as beds and stoves, even if deprivation is only temporary); *see also United States v. James Daniel Good*, 510 U.S. 43, 48-49 (1993) (same, real property); *Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir. 1982) (due process protections apply to the temporary detention of private automobiles); *Coiknos v. Dist. of Columbia*, 728 F.2d 502 (D.C. Cir. 1983) (following *Sutton*). Accordingly, due process applies.

"Once it is determined that due process applies, the question remains what process is due." *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). As a threshold matter, the Court must determine the appropriate test to apply in considering what post-seizure process is required for owners

10

whose vehicles are seized pursuant to forfeiture laws.   Mr.
Simms urges the Court to follow two circuit court decisions:
*Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) and *Smith v. City
of Chicago*, 524 F.3d 834 (7th Cir. 2008) (vacated as moot by
*Alvarez v. Smith*, 130 S. Ct. 576 (2009)).   Both of these
decisions, in turn, rely heavily on *Good*, 510 U.S. 43.
Defendants, for their part, contend that the appropriate test is
set forth in *United States v. Eight Thousand Eight Hundred and
Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555
(1983) and *United States v. Von Neumann*, 474 U.S. 242 (1986).

      i.   *Krimstock* and *Smith*[6]

In *Krimstock*, the Second Circuit considered a forfeiture
scheme under New York City law, which was very similar to the
District's.   Police officers in the field could seize a vehicle
based on the officer's determination that probable cause existed
to believe the vehicle was subject to forfeiture because it had
been used as an instrumentality of crime.   In *Krimstock*, the
crime at issue was drunk driving. 306 F.3d at 45.   New York City
law did not provide a prompt, independent hearing for an owner

---

[6] The Supreme Court granted certiorari and received briefing in
*Smith*, however, the Court subsequently learned that "there was
no longer any dispute about the ownership or possession of the
relevant property."   *Alvarez v. Smith*, 130 S. Ct. at 580.   As a
result, the Court declared the case moot and vacated the lower
court opinion in accordance with its standard practice.   *Id.* at
583.   *Smith*'s analysis and reasoning, as well as the forfeiture
scheme (Chicago's) before it, are substantially identical to
*Krimstock*'s.   *See generally Smith*, 524 F.3d 834.

to challenge the validity of the initial seizure or the City's continued custody of the vehicle.  *Id.*  Finally, although the City's law required the City to initiate a civil forfeiture proceeding within twenty-five days from an owner's demand for the vehicle, in practice the City commonly held owners' cars for months or years before providing any hearing on the forfeiture. *Id.* 46.  The holds on the vehicles continued long after any underlying criminal proceeding had concluded.  *Id.* at 45-46.

Writing for the panel, then-Judge Sotomayor found unconstitutional New York City's continued retention of private vehicles seized incident to arrests, without providing vehicle owners a prompt post-seizure hearing at which the owners could challenge the legitimacy of the initial seizure and the City's continued retention of the vehicle pending forfeiture proceedings.  The *Krimstock* court relied on *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Good*.  *Mathews* holds that the Due Process Clause requires, in general, that when the government seeks to deprive an individual of property, it must provide a hearing before an impartial decision maker where the individual may be heard "at a meaningful time and in a meaningful manner." 424 U.S. at 333 (citations omitted).  In order to determine what process is required, three factors must be weighed: (1) the nature and weight of the private interest affected by the challenged official action; (2) the risk of erroneous

12

deprivation given the procedures currently employed, and the probable value of additional safeguards; and (3) the government's interest in avoiding additional procedural safeguards. *Id.* at 335.   In *Good*, the Court applied *Mathews* to the realm of civil forfeiture.   Property owner James Daniel Good challenged the government's attempt to seize his house, which had been used in connection with a drug offense, for civil forfeiture without prior notice and a hearing.   The Supreme Court invalidated the seizure, holding that, absent exigent circumstances, "individuals must receive notice and an opportunity to be heard *before* the government deprives them of property."   510 U.S. at 48 (emphasis added).   When the forfeitable property is a vehicle connected with suspected criminal activity, however, the Court recognized that the property's mobility combined with the Government's interest in the property may create a "special need for very prompt action that justifie[s] the postponement of notice and hearing until after the seizure."   *Id.* at 52 (citations omitted).

The *Krimstock* court applied *Good* to just such a situation – the seizure and retention of vehicles *pendente lite*, until the conclusion of civil forfeiture proceedings.   Noting that even "temporary deprivation of real or personal property *pendente lite* in a forfeiture action must satisfy the demands of" procedural due process, the Second Circuit found that the

government's failure to provide a prompt post-seizure hearing to owners of impounded automobiles violated the Due Process Clause. 306 F.3d at 51.   Turning to the first *Mathews* factor, the court found that the private interest affected, the deprivation of an automobile, is significant in light of the centrality of the automobile to modern life.   *Id.* at 61-62.   The court found the private interest at stake particularly significant given the length of time owners could be without their cars under New York City's forfeiture scheme - months, if not years.   *Id.* at 54-55.

The court found the second factor, the risk of erroneous deprivation, weighed narrowly in favor of the City because "the risk of erroneous seizure and retention of a vehicle is reduced in the case of a DWI owner-arrestee, because a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate."   *Id.* at 62-63. However, the court also found a significant risk of erroneous deprivation, because the statute allowed the City to take custody of automobiles suspected of use in criminal conduct without regard to whether the owner of the property was innocent of any wrongful activity.   *Id.* at 56-57.   Moreover, the City had a pecuniary interest in the outcome of the proceeding; forfeited property could, at the discretion of the police, be used or sold by the government.   *Id.* at 63.   The risk of erroneous deprivation was further enhanced because it was irreparable: an

owner's loss of his car for months or years could not be recompensed if he prevailed at a later hearing.  *Id.* at 64.

Finally, the Second Circuit found the last *Mathews* factor, the government's interest in preventing the vehicles from being sold or destroyed, did not trump property owners' due process rights because the government could protect its interests by other measures short of continued seizure.  Specifically, the government could require claimants to post bonds before reclaiming their vehicles, or ask a court to issue a restraining order prohibiting the car from sale or destruction pending forfeiture proceedings.  *Id.* at 65.  The *Krimstock* court concluded that protection of owners' due process rights required that owners be permitted to challenge the probable cause for the initial warrantless seizure, as well as the probable validity of the continued retention of the seized vehicle *pendente lite*, promptly after seizure and prior to the ultimate resolution of the forfeiture action in court.  *Id.* at 49.  The hearing would be "limited" and would not involve "exhaustive evidentiary battles that might threaten to duplicate the eventual forfeiture hearing."  *Id.* at 69-70; *see also Smith*, 524 F.3d at 839 ("The point is to protect the rights of both an innocent owner and anyone else who has been deprived of property and . . . to see whether a bond or an order can be fashioned to allow the

legitimate use of the property while the forfeiture proceeding is pending.").

   ii. *$8,850* and *Von Neumann*

 In *$8,850* and *Von Neumann*, the Supreme Court considered challenges by property owners to the length of time between the seizure of their property and the forfeiture trials.  Both cases involved property seized by the United States Customs Service under the same statutory scheme.  Under the statute, owners of seized property had two options:  petition the Secretary of the Treasury for remission or mitigation of the forfeiture within 60 days of the seizure, or challenge the seizure in a judicial forfeiture action by the government.  *$8850*, 461 U.S. at 557; *Von Neumann*, 474 U.S. at 243.  In *$8,850*, claimant Mary Josephine Vasquez's currency was seized by Customs at the airport.  Ms. Vasquez elected to file a petition, but it was delayed pending the resolution of her criminal proceedings, which included a forfeiture count.  *$8850*, 461 U.S. at 558-60. Three months after she was acquitted of the criminal charges relating to the forfeiture, the government initiated civil forfeiture proceedings.  *Id.* at 560.  Ms. Velasquez moved to dismiss the forfeiture action, arguing that "the government's delay in filing a civil forfeiture proceeding," for eighteen months after the initial seizure, "violated her due process right to a hearing at a meaningful time."  *Id.* at 562 (citations

16

omitted).   In *Von Neumann*, claimant John Von Neumann's car was seized at the Canadian border.   Mr. Von Neumann also elected to file a petition for remission.   474 U.S. at 245.   Two weeks after filing, he posted a bond for the value of the car, which was released to him.   *Id.* at 245-46.   He then filed a supplement to the remission petition.   Less than two weeks thereafter, and a total of 36 days after the initial seizure, the government reduced his penalty from $24,500 to $3,600.   *Id.*   Mr. Von Neumann challenged the seizure and remission procedure on several grounds, including that the government's "36-day delay in acting on his remission petition denied [him] due process of law."   *Id.* at 247.

The Supreme Court found that neither delay violated the property owners' constitutional rights.   The Court framed the issue as the delay between seizure and the outcome of the judicial forfeiture proceeding, and found that the property owners' due process rights were analogous to "a defendant's right to a speedy trial once an indictment or other process has issued."   *$8850*, 461 U.S. at 564; *Von Neumann*, 474 U.S. at 247. The Court used the four factor balancing test in *Barker v. Wingo*, 407 U.S. 514 (1972), which provides the framework for determining when a criminal defendant's case should be dismissed for a violation of the Sixth Amendment's right to a speedy trial.   The four factors to be considered are: length of delay,

reasons for delay, defendant's assertion of his right to speedy trial, and prejudice to the defendant.  407 U.S. at 530.[7]  The Court did not consider, nor was it asked to consider, whether process was due to protect the owners' property rights *pendente lite*, between the seizure and the conclusion of judicial forfeiture proceedings.[8]

Analyzing the *Barker* factors, the *$8850* court found that the government had shown diligence and given reasonable

---

[7]  Under *Barker*, delays of less than a year are, as a general matter, constitutionally adequate, thus, the four factor test is not triggered.  *Dogett v. United States*, 505 U.S. 647, 651 (1992).

[8]  Although the District has not made the argument, the Court has nevertheless considered whether *Von Neumann* addressed claimants' due process rights *pendente lite* with the statement: "[i]mplicit in this Court's discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect Von Newmann's property interest in the car."  474 U.S. at 249. This statement does not affect the outcome in this case for the following reasons.  First, as discussed throughout, *$8,850* and *Von Neumann* addressed when forfeiture proceedings had to be abandoned altogether for lack of due process, not what interim process must be provided pending an otherwise valid proceeding. Second, the Court in *$8,850* and *Von Newmann* was faced with a different statutory scheme than the District's, one which provided claimants opportunities to trigger a rapid filing of a forfeiture action.  The Court in both cases relied on the availability of these opportunities, which do not exist in the District's forfeiture scheme, in determining what process was due.  Finally, both *$8,850* and *Von Neumann* predate *Good*, which applied the *Mathews* factors to property seized pending civil forfeiture proceedings and determined that temporary deprivations of property in the forfeiture context require due process *pendente lite*.  This Court finds *Good* is the most recent as well as the most closely applicable binding precedent in this case.

explanations for the delay, that Ms. Vasquez had not
consistently asserted her rights to speedy judicial proceedings,
and that the delay did not prejudice her ability to present a
claim on the merits of the forfeiture.  461 U.S. at 569.  The
*Von Neumann* court found that Mr. Von Neumann's speedy trial
rights did not apply to elective remission proceedings, which,
if chosen, "supply both the Government and the claimant a way to
resolve [their] dispute informally rather than in judicial
forfeiture proceedings."  474 U.S. at 249.  Instead, his speedy
trial rights applied solely to the length of time between
seizure and institution of judicial forfeiture proceedings.  As
the seizure of his vehicle was resolved, within 36 days, via the
remission proceedings, no judicial forfeiture proceedings began
and there was therefore no basis for a *Barker* inquiry.  *Id*.  In
the alternative, the *Von Neumann* court applied the *Barker*
factors and found that, under *Barker*, a 36-day delay between
seizure and final disposition of his remission petition did not
violate his speedy trial rights.  *Id*. at 250-51.  Both Courts
also observed that, notwithstanding any delays in the
administrative or judicial proceedings, "a claimant is able to
trigger rapid filing of a forfeiture action if he desires it,"
by, *inter alia*, filing an equitable action seeking an order
compelling the return of the seized property or, if the claimant
believes the initial seizure was improper, filing a motion for

return of the seized property under Federal Rule of Criminal

Procedure 41(e).   461 U.S. at 569; 474 U.S. at 244, n.4.

> iii. *Krimstock* and the *Mathews* factors apply in this
> case.

Plaintiff urges the Court to apply *Krimstock* and the

*Mathews v. Eldridge* factors in this case.   He argues that the

speedy trial test articulated in *Barker v. Wingo* and applied in

*$8,850* and *Von Neumann* addresses a question of law which is

irrelevant to the issues in this case.

> *Barker* and its progeny involve an individual claiming that
> the legal process has taken so long that the Constitution
> mandates that the government should no longer be able to
> maintain its criminal prosecution (or, in this case, civil
> forfeiture) at all. . . . But Mr. Simms seeks something
> entirely different.   He seeks—recognizing that the
> Constitution allows civil legal proceedings to take a very
> long time—a prompt post-seizure hearing at which a neutral
> decision maker can determine whether the initial seizure
> was valid and whether continued retention of his vehicle
> pending lengthy forfeiture proceedings is justified in
> light of the circumstances brought to the neutral arbiter's
> attention.

Reply at 2.   Defendants, for their part, assert that *$8,850* and

*Von Neumann* limit a property owner's due process rights in a

civil forfeiture context to a *Barker* analysis.   Opp'n at 9.

They do not, however, explain why *Mathews* protections do not

apply to protect the owner's property rights *pendente lite*.[9]

---

[9] Defendants also cite a 2011 case from the Illinois Supreme
Court, *People v. One 1998 GMC*, 960 N.E.2d 1071 (Ill. 2011) in
support of their argument that *Barker*, not *Mathews*, provides all
the process that is due in civil forfeiture proceedings.   The
Court finds this case to be of limited value for several

The Court agrees with plaintiff.  The question in this case is what process is due when the government seeks to deprive a person of a property interest pending a final decision on the deprivation.  The Supreme Court has consistently answered this question by applying the *Mathews* factors, balancing the parties' interests to determine what constitutes an individual's procedural due process right to be heard "at a meaningful time and in a meaningful manner" when the government acts to deprive a person of his property, even when the deprivation is temporary and pending the outcome of further proceedings.[10]  *Barker* does

---

reasons.  First and most important, by the time *One 1998 GMC* was decided, the civil forfeiture law that the court upheld was no longer the law; the state had amended it to provide <u>more</u> interim process, specifically, to "allow for a timely probable cause hearing in vehicle-forfeiture proceedings going forward."  960 N.E.2d at 1093.  Second, the trial court in that case provided a *Barker* remedy, namely, dismissing all of the forfeiture claims with prejudice instead of confining its relief to the interim status of the vehicles pending forfeiture proceedings.  Third, the Illinois law, even pre-amendment, provided significantly more interim process for car owners to promptly challenge state retention of their vehicles than New York City's or the District's.  *See id.* at 1084 (owner, on his own, may file motion challenging unlawful seizure and moving for return of property without waiting for forfeiture proceedings; owner may also file early motion to dismiss challenging State's allegation of probable cause).

[10] *See, e.g.*, *Good*, 510 U.S. 43 (applying *Mathews* factors, concluding prior hearing is required before pre-judgment seizure of real property); *Connecticut v. Doehr*, 501 U.S. 1 (1991) (*Mathews* factors require prior hearing before pre-judgment attachment of real property); *Barry v. Barchi*, 443 U.S. 55 (1979) (*Mathews* requires prompt post-deprivation hearing when

not address this issue.  Rather, it asks how long a government

may keep open a case before it is fundamentally unfair to allow

it to continue.  The *Barker* test, therefore, does not apply.

> iv.  Under the *Mathews* factors, a Prompt Post-
>      Deprivation Hearing is Required

Applying the *Mathews* factors to the facts and circumstances

of this case, the Court concludes, for many of the reasons

stated in *Krimstock* and *Smith*, that Mr. Simms is likely to

prevail on his claim that the District violated his rights under

the Due Process Clause by failing to provide him with notice and

a prompt post-seizure opportunity to contest the validity of the

initial seizure, as well as the validity of the government's

continuing retention of the vehicle pending judicial forfeiture

---

horse trainer's license was suspended); *United States v. E-Gold*,
521 F.3d 411 (D.C. Cir. 2008) (*Mathews* requires prompt post-
deprivation hearing after assets seized on a warrant pending
trial on merits, where defendants assert access to assets is
necessary to pay counsel of their choice); *Coleman v. Watt*, 40
F.3d 255, 260 (8th Cir. 1994) (prompt post-deprivation hearing
required after car towed and impounded); *Breath v. Cronvich*, 729
F.2d 1006 (5th Cir. 1984) (prompt post-seizure hearing required
after automobile is towed; hearing may be delayed only if owner
is permitted to regain the use of the automobile in the
interim).  Even before *Mathews* was decided, the Supreme Court
engaged in a similar balancing test to determine what interim
process was due.  *See, e.g.*, *Fuentes*, 407 U.S. at 80-81 (hearing
required before *ex parte*, pre-judgment seizure of household
goods, finding plaintiff had an important interest in items such
as a stove or a bed and the risk of unfair or mistaken
deprivation of property was great); *North Georgia Finishing,
Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975) (considering same and
requiring hearing before pre-judgment garnishment of bank
account); *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969)
(considering same factors and finding hearing is necessary
before pre-judgment garnishment of wages).

proceedings.

An individual has a strong interest in his car.  Our
society is "for good or not, highly dependent on the
automobile." *Smith*, 524 F.3d at 838.  It is often an
individual's "most valuable possession," as well as his or her
primary "mode of transportation, and for some, the means to earn
a livelihood." *Krimstock*, 306 F.3d at 61 (citations omitted);
*cf. City of Los Angeles v. David*, 538 U.S. 715, 717-18 (2003)
(temporary deprivation of the use of money does not give rise to
a strong private interest, as opposed to the temporary
deprivation of the use of an automobile, which does).  In
addition, the length of the deprivation increases the weight of
the individual's interest in possessing the vehicle.  *Krimstock*
at 61-62 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434
(1982)).  Unlike many other jurisdictions, which provide some
opportunity for owners of seized vehicles to mount interim
challenges to the seizure and retention of their cars, the
District provides an individual no opportunity to lessen the
length of the deprivation by, for example, filing a remission
petition or an action for replevin, or seeking a hardship
exception to indefinite seizure.[11]

---

[11] *See, e.g., One 1998 GMC*, 960 N.E.2d at 1084 (explaining
Illinois statutory scheme enabling owners to move for return of
property or file early motion to dismiss based on lack of
probable cause); Civil Asset Forfeiture Reform Act (CAFRA), 18

The District argues that Mr. Simms cannot prevail on the first *Mathews* factor because, regardless of "the generalized interest that *other* people may have in the use of their own cars," Mr. Simms himself can "get to work and carry on his usual activities using public transportation and other means," Opp'n at 12, "with little more than inconvenience," *id.* at 15.  The Court is not convinced.  As an initial matter, as plaintiff correctly points out, the District's argument "misunderstands the level of generality at which *Mathews* operates."  Reply at 9. *Mathews* and its progeny involve the "weighing of fiscal and administrative burdens against the interest of a particular *category* of claimants," to determine what process is due. *Mathews*, 424 U.S. at 348 (analyzing the importance of Social Security disability benefits to all recipients as a category); *see also Good*, 510 U.S. at 43 (analyzing property owners' interest in their real property regardless of whether they lived in the property or, like Mr. Good, rented it to tenants). Moreover, contrary to the District's representations, Mr. Simms

U.S.C. § 983(f) (permitting immediate release of property pending forfeiture litigation if government retention would cause serious hardship); Kan. Stat. Ann. § 60-4112 (c),(d) (interest holder can obtain a preliminary probable cause hearing within thirty five days of seizure; can also apply for interim return of property if it is necessary for the defense of the person's criminal charge); Minn. Stat. Ann. § 609.531(5a)(a)(b) (owner may post bond to have seized property returned before forfeiture action is determined, and can gain possession in the interim by surrendering the vehicle's certificate of title).

has shown that he, personally, has a strong interest in his vehicle.  Plaintiff states that without his car it takes him over three hours per day to commute to and from work via public transportation, costs the equivalent of three-and-a-third hours of his wages to do so, has resulted in reprimands for tardiness which could lead to termination of his employment, and has severely impeded his ability to transport his family to necessary life events such as day care and doctors' appointments.  Simms Decl. ¶¶ 3, 4, 10.

Turning to the second factor, the Court finds there is at least some risk of erroneous deprivation when the District seizes a vehicle pursuant to a traffic stop.  Moreover, the probable value of additional procedural safeguards is high.

First, there is an inherent risk of error when a seizure is based a traffic stop: namely, its validity rests solely on the arresting officer's unreviewed probable cause determination. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 112-13 (1975) (requiring prompt probable cause determination before a neutral magistrate following a warrantless arrest, because of the risk of unfounded charges of crime when arrest is based solely on evidence interpreted "by the officer engaged in the often competitive enterprise of ferreting out crime"(citations omitted)).

Second, with respect to innocent owners, the danger of erroneous deprivation is particularly high.  "In the due process context, the Supreme Court has shown special concern for the risk of erroneous deprivation posed to innocent owners." *Krimstock*, 306 F.3d at 55-56 (citing *Good*, 510 U.S. at 55).  The D.C. Code provides an absolute defense to forfeiture of vehicles for innocent owners.  It provides:

> (c)  An innocent owner's interest in a conveyance which has been seized shall not be forfeited under this section.
>> (1) A person is an innocent owner if he or she establishes, by a preponderance of the evidence:
>>> (A) That he or she did not know that a person or persons in the conveyance was transporting, possessing, or concealing any firearm or that the conveyance was involved in or was being used in the commission of any illegal act involving any firearm; or
>>> (B) That, upon receiving knowledge of the presence of any illegal firearm in or on the conveyance or that the conveyance was being used in the commission of an illegal act involving a forfeiture, he or she took action to terminate the presence in or on the conveyance of the person, persons, or firearms.

D.C. Code § 7-2507.06a(c).  In the rush of a traffic stop, it may be particularly difficult for a police officer to accurately assess whether a vehicle owner knew about any firearms or other contraband concealed in the vehicle.  *See, e.g.*, D.C. Code § 48-905.02(a)(4)(B) (no forfeiture of vehicle used to transport drugs if the vehicle was used for this purpose without the owner's knowledge or consent).  Under the District's current

26

forfeiture scheme, however, innocent owners are given no opportunity to test the probable validity of the District's continued impoundment of their vehicles after the seizure and pending forfeiture proceedings.

The District argues that there is no compelling risk of erroneous deprivation in this case because the District conducted investigations leading to Mr. Simms's arrest, making a probable cause determination for the forfeiture, and preparing for the judicial forfeiture proceedings. Opp'n at 15. The District ignores, however, that all three of these investigations are *ex parte* by the District and contemplate no involvement of the owner or a neutral arbiter. *See* D.C. Code §§ 48-905.02(b), (c), (d)(3)(E). "Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Good*, 510 U.S. at 55 (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, J., concurring)). Likewise, the District's argument that Mr. Simms will ultimately lose his civil forfeiture case is unpersuasive. The strength of an individual's case at the ultimate forfeiture proceeding does not diminish his "possessory interest post seizure and pre-judgment." *Krimstock*, 306 F.3d at 62. "Fair procedures are not

confined to the innocent.  The question before us is the legality of the seizure," as well as the continuing interim retention, "not the strength of the Government's case." *Good*, 510 U.S. at 62.

Finally, the risk of erroneous deprivation is cause for heightened concern when the deprivation "cannot be recompensed by the claimant's prevailing in later proceedings." *Krimstock* at 63.  Unlike certain deprivations such as Social Security Disability benefits, which are not based on financial need and for which full retroactive relief can be awarded if plaintiff later prevails, *see Mathews*, 424 U.S. at 340, "an owner cannot recover the lost use of a vehicle by prevailing in a forfeiture proceeding.  The loss is felt in the owner's inability to use a vehicle that continues to depreciate in value as it stands idle in the police lot," *Krimstock*, 306 F.3d at 64.[12]

For the foregoing reasons, the Court finds that there is at least some risk of erroneous deprivations for vehicle owners

---

[12] Plaintiff also claims the MPD's pecuniary interest in the outcome of the forfeiture proceedings (specifically, the fact that the MPD receives a portion of the revenue from forfeiture sales), further increases the risk of erroneous deprivation. Mot. at 18-20.  In response, the District has provided information that, in Fiscal Year 2011, the net revenue MPD received from forfeiture sales amounted to less than one tenth of one percent of MPD's budget.  Supp'l Opp'n at 4 (citing Ex. 2, Decl. of Leroy Clay).  At this stage of the proceedings, the Court does not rely on MPD's pecuniary interest in finding a risk of erroneous deprivation.

like Mr. Simms, whose vehicles have been seized pursuant to traffic stops and are not needed as evidence in the underlying criminal proceeding.[13]

These risks could be mitigated by additional procedural safeguards.  Plaintiff requests a hearing before a neutral arbiter at which owners would be able to challenge both "the validity of the initial seizure and the validity of the continued impoundment of the car pending any forfeiture litigation."  Mot. at 2.  At such a hearing, the owner would be able to, in some form or fashion, (1) obtain review of the arresting officer's probable cause determination; (2) if appropriate, assert an innocent owner or other defense to forfeiture; and (3) seek conditions from the arbiter under which the vehicle could be returned on an interim basis pending forfeiture proceedings while still protecting the District's interest in the vehicle.  For example, the arbiter could order the owner to give bond or surrender title, or could issue an order restraining the owner from selling or disposing of the vehicle pending the outcome of forfeiture proceedings.  *See,*

---

[13] The District claims, wrongly, that granting Mr. Simms's preliminary injunction would give him "the opportunity to drive off with the evidence in the criminal proceeding."  Defs.' Supp'l Opp'n at 3.  As plaintiff makes clear, his motion addresses only "whether *Mathews* requires certain procedures to be followed when the District, *after that evidence is no longer needed* (*i.e.*, after the criminal prosecution is over) seeks to continue depriving the owner of the property."  Pl.'s Resp. to Defs.' Supplement at 3-4.

*e.g.*, *Good*, 510 U.S. at 62; *Smith*, 524 F.3d at 836 (additional procedures such as a temporary restraining order preventing the sale or destruction of the property or bond would allow owners to retain their property *pendente lite*, thus mitigating the risk of erroneous deprivation).

Finally, the third *Mathews* factor, the District's interest in avoiding additional procedural safeguards, also weighs in Plaintiff's favor.  The District claims it has an interest in "avoiding additional procedures that would greatly increase the cost of forfeiture," Opp'n at 12,  but it presents no evidence regarding the potential burden of alternative procedural measures to ensure that accurate determinations regarding deprivation of property are made.  In supplemental filings, the District also cites its interest in removing instrumentalities of crime from the streets, thereby preventing future crime. Supp'l Opp'n at 7.  This Court finds, however, that this interest is somewhat attenuated since Mr. Simms was acquitted of misconduct in the criminal proceeding, and since his misconduct has yet to be established in a civil proceeding.  Until that time comes, his motor vehicle can serve many legitimate purposes.  *See Krimstock*, 306 F.3d at 66-67 (rejecting the government's interest in preventing offending vehicles from being used in future crime).

Finally, although the District does not argue that it has an interest in protecting its interest in the vehicles in the event they are ultimately subject to forfeiture, the alternative procedural safeguards outlined above (such as requiring owners to give bond to obtain interim release of their vehicles, or obtaining orders prohibiting them from selling or disposing of the vehicles pending judicial forfeiture proceedings) would protect these interests.

Based on the foregoing, the Court finds that Mr. Simms is likely to succeed on the merits of his claim: the Due Process Clause requires that a vehicle owner whose vehicle has been seized, and is not being held as evidence, be given a prompt post-seizure opportunity to test the validity of the initial seizure and of the District's continuing retention during the pendency of forfeiture proceedings.

### B.   Irreparable Harm

Mr. Simms argues that he will suffer irreparable harm if the Court does not provide him with his car until either the conclusion of the forfeiture proceedings or until the District can provide him with notice and an opportunity to be heard *pendente lite*.  He alleges that as result of the loss of his car, his employment is in jeopardy, he is unable to spend time with his infant daughter, and he is unable to take her as well

31

as his fiancée to doctors' appointments, daycare, and family
gatherings.   In addition, he asserts that deprivation of his due
process rights alone constitutes irreparable harm.   The District
has argued that the loss of Mr. Simms's automobile does not
constitute irreparable harm for him specifically, as he is still
able to get to work and take care of his family.   The District
does not address plaintiff's argument that deprivation of his
constitutional rights is *per se* irreparable harm.

This Circuit has set a high standard for irreparable
injury.   First, the injury "must be both certain and great; it
must be actual and not theoretical." *Wisc. Gas Co. v. FERC,* 758
F.2d 669, 674 (D.C. Cir. 1985) (*per curiam*). The plaintiff must
show "[t]he injury complained of is of such *imminence* that there
is a clear and present need for equitable relief to prevent
irreparable harm." *Id.* (citations, brackets, and internal
quotation marks omitted).   Second, the injury must be beyond
remediation.   *Id.* "It has long been established that the loss
of constitutional freedoms, 'for even minimal periods of time,
unquestionably constitutes irreparable injury.'" *Mills v. Dist.
of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod
v. Burns*, 427 U.S. 347, 373 (1976)).

As explained above, Mr. Simms is likely to succeed on the
merits of his claim that the District's forfeiture scheme
violates his Fifth Amendment right to due process by failing to

provide him with a prompt post-seizure hearing to challenge the validity of the seizure of his vehicle, and the District's indefinite retention of the vehicle, pending forfeiture proceedings.  This injury is certain, because it has already occurred, and is ongoing, because the District has held his car for over a year and has yet to provide plaintiff with any type of hearing.  Accordingly, the Court finds this deprivation of plaintiff's constitutional rights constitutes irreparable harm. *See Gordon v. Holder*, 826 F. Supp. 2d 279, 296 (D.D.C. 2011) (violation of plaintiff's procedural due process rights creates irreparable harm); *Goings v. Court Services and Offender Supervision Agency*, 786 F. Supp. 2d 48, 78-79 (D.D.C. 2011) (same).

### C.    Balancing of the Equities and the Public Interest

The plaintiff argues that the District will not be harmed by the narrow remedy he seeks, namely, permitting the plaintiff to recover his car, on condition that he maintain insurance and refrain from selling or otherwise disposing of it, pending a final decision on the merits.  Reply at 15-17; Pl.'s Response to Defs.' Supp'l Mem. at 10.  Mr. Simms further argues that the public interest weighs in favor of protecting a party's constitutional rights.  Pl.'s Response to Defs.' Supp'l Mem. at 10-15; Pl.'s Supp'l Mem. at 5-10.  The District, for its part,

claims that granting the preliminary injunction would "call into question the entire forfeiture scheme, undermining the District's ability to seize property for any and all purposes." Opp'n at 15; *see also* Supp'l Opp'n at 7 ("The District would effectively be blocked from using civil forfeiture as a law enforcement tool, since the Court's decision would undoubtedly be asserted by claimants in one way or another in every forfeiture unless and until there is a legislative solution along the lines of an order issued by the Court."); Defs.' Supp'l Filing of June 22, 2012 at 4-5 (same).  Defendants also argue that requiring them to implement notice and hearing procedures would cause an administrative and financial burden. Opp'n at 15.

After careful consideration, the Court concludes that the balance of the equities and the public interest tip in favor of the plaintiff.  Mr. Simms has demonstrated that the loss of his vehicle harms his ability to go about the necessities of daily life, and the District's continued retention of his vehicle without the opportunity to be heard deprives him of his constitutionally-protected rights.  "It is always in the public interest to prevent the violation of a party's constitutional rights."  *Abdah v. Bush,* No. Civ. A. 04-1254, 2005 U.S. Dist. LEXIS 4942, *22 (D.D.C. Ma. 29, 2005) (quoting *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.

1994)); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012); *Freedberg v. U.S. Dep't of Justice*, 703 F. Supp. 107, 111 (D.D.C. 1988) (citation omitted).

The harms predicted by the District, on the other hand, are overstated.  Defendants claim that a preliminary injunction would bring the entire forfeiture system to a grinding halt. Plaintiff, however, does not seek to enjoin the statute in general.  He seeks, for the time being, only to prevent the District from continuing to hold one vehicle in particular.  The preliminary injunction he requests is narrowly tailored to (1) a single individual, (2) whose vehicle was seized and continues to be held by the District pending forfeiture proceedings, (3) who has made a claim for his vehicle in accordance with the governing statute, and (4) whose vehicle is neither needed as evidence in a criminal proceeding, nor subject to criminal forfeiture or any other holds.[14]

Defendants also claim that requiring them to implement notice and hearing procedures would cause an administrative and financial burden; however, the preliminary injunction does not

---

[14]  According to the District's own numbers, provided at the Court's request, there are, at maximum, eight to ten people per month who are similarly situated.  Supp'l Opp'n at Ex. 3; Supp'l Decl. of Lt. Derek Gray at ¶ 5.b.  Even if the injunction reached beyond plaintiff himself, which it does not, these numbers contradict any claim that the District's interest in continuing to exercise its forfeiture powers – an interest the Court recognizes - will be much affected by the preliminary injunction.

require these measures.  As Mr. Simms points out, Defendants "make no arguments as to why the process sought here would be costly, let along why those costs would overwhelm the other constitutional considerations." Reply at 16; *see also Smith*, 524 F.3d at 838 ("[D]ue process always imposes some burden on a governing entity.").

The District relies on two cases which the Court raised with the parties during briefing -- *Allina Health Svcs. v. Sebelius*, 756 F. Supp. 2d 61 (D.D.C. 2010) and *Goings v. Court Services and Offender Supervision Agency for the Dist. of Columbia*, 786 F. Supp. 2d 48 (D.D.C. 2011) -- in support of its public interest argument.  Both are distinguishable.  In *Allina*, plaintiff hospitals asked the court to grant a preliminary injunction which would have required the Department of Health and Human Services to create a separate method of calculating Medicare reimbursement for them and to change the government's payment processing system for plaintiff hospitals accordingly. As Judge Collyer correctly noted, this would create a tremendous administrative burden for the government at the preliminary injunction stage.  She found that imposing this "disruptive remedy" would not be in the public interest, particularly since the D.C. Circuit was in the process of deciding another case on precisely the same grounds, which would control the outcome of the case before her and potentially create competing,

inconsistent reimbursement requirements.   756 F. Supp. 2d at 70-71.   In this case, unlike *Allina*, the preliminary injunction does not force the defendants to craft a new procedure.   Nor, as far as the Court is aware, are there any pending cases which would control the outcome of this one.

*Goings* is likewise distinguishable.   Mr. Goings, a convicted sex-offender who was on probation and who was transferred from Florida to the District through an interstate compact, claimed certain conditions of probation were imposed on him in the District without due process, and sought to enjoin the conditions.   While Judge Howell found plaintiff was likely to succeed on the merits, she found that the preliminary injunction was not in the public interest because the Court had no information on how conditions of probation were imposed either in the District or in other states whose probationers were transferred throughout the country under the interstate compact.   Accordingly, given the possibility that an injunction would cast doubt "on non-judicial modifications of probation conditions placed upon offenders transferred under [the interstate compact] across the country," and in light of "the current incomplete record before the Court and the lack of any constructive input from the parties about the scope or impact" of a preliminary injunction, Judge Howell declined to grant plaintiff's request.   786 F. Supp. 2d at 79-80.   In this case,

on the other hand, no laws beyond the District's forfeiture scheme are implicated and no other states' processes are at issue.  Moreover, the Court has before it precise information, provided by the District, about the number of people similarly situated to Mr. Simms.  *See supra* n.14.  Accordingly, Judge Howell's concerns in *Goings* lack force here.

The Court therefore finds that Plaintiff has demonstrated that the balance of the equities and the public interest tip in his favor.

### D.   Security

Pursuant to Federal Rule of Civil Procedure 65(c), "the court may issue a preliminary injunction . . . only of the movant gives security in an amount that the court considers proper to pay the costs and damages substained by any party found to have been wrongfully enjoined or restrained."  Courts in this Circuit have found the Rule "vest[s] broad discretion in the district court to determine the appropriate amount of an injuction bond," *DSE, Inc. v. Uniter States*, 169 F.3d 21, 33 (D.C. Cir. 1999), including the discretion to require no bond at all.  *Council on American-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 80 (D.D.C. 2009).

In this case, the costs or damages sustained by the District would be modest -- the loss of the amount for which Mr. Simms' car could be sold at forfeiture.  Moreover, as discussed above, plaintiff has extremely limited financial resources, and is unable to post security in any significant amount.  Courts regularly take both of

these factors into account when exercising their discretion to require a bond. *See Id.* at 80 (requiring no bond where the defendant would not be substantially injured by the issuance of an injunction); *Swanson v. Univ. of Hawaii Prof. Assembly*, 269 F. Supp. 2d 1252 (D. Haw. 2003) (bond requirement for public employees waived based on ability to pay, and also because injunction sought enforcement of constitutional rights); *see also* 11A Charles A. Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, Federal Pracrtice and Procedure § 2954 (2d ed.) (same). Accordingly, based on the record in this case, in particular the District's interest in the value of the car as compared with plaintiff's limited ability to pay a bond and the constitutional rights he seeks to protect, the Court will exercise its discretion in this case to impose a minimal security requirement. Plaintiff shall give security in the amount of $1,000.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's motion for a preliminary injunction is **GRANTED.** It is hereby

**ORDERED** that the District shall forthwith release Mr. Simms's vehicle to him pending the outcome of the forfeiture proceedings which were instituted in the Superior Court of the District of Columbia, *District of Columbia v. One 2007 Saturn Aura V.I.N. 1G8ZS57N17F291738*, Civ. Action No. 4742-12 (Libel); it is further

**ORDERED** that Mr. Simms shall not sell or otherwise dispose of the vehicle pending the outcome of the forfeiture proceedings; it is further

**ORDERED** that Mr. Simms shall maintain insurance on his vehicle pending the outcome of the forfeiture proceedings; it is further

**ORDERED** that Mr. Simms shall give security as required by Federal Rule of Civil Procedure 65(c) in the amount of $1000.00.

An appropriate Order accompanies this Memorandum Opinion.

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **July 6, 2012**